Good morning. May it please the court. You may. Counsel. As pled extensively in plaintiff's complaint, for 20 years, Tammy Williams, a hardworking woman, a dutiful wife, a devoted mother, was hopelessly ensnared in an endless Byzantine money trap, conceived and set up by the City of Sherwood, Arkansas. For 20 years, Sherwood had its hooks in Ms. Williams, breaking her back and the backs of countless others with incarceration, threats of incarceration, stalking, harassment, intimidation, and I don't think it's too extreme to say Gestapo-like tactics. This undue transfer of wealth was implemented to bolster Sherwood's financial coffers, to fund various citywide departments, and to supplement its tax base. How did this happen? How did Ms. Williams become trapped in this never-ending cycle of financial demands leading to her ruin? Well, back in 1997, during the Clinton administration, Ms. Williams bounced four checks for family essentials. That's how this all started. Now, we have gone over ad nauseum the process that we complain of that took place at the district court through the policy of the City of Sherwood. Basically, what it boils down to, Your Honors, is that Ms. Williams wrote some bad checks. And she was cited for that, and she was convicted of that. And the conviction on those four bounced checks was valid and legitimate. And she does not run from that. Indeed, Ms. Williams has always conceded that while not willful, she did, in fact, violate Arkansas's hot check law. Counsel, weren't the subsequent fines also criminal offenses in this case? And isn't that what distinguishes this case from some of the other, for example, Powers or the Fant case? Isn't that a meaningful distinction here, that there were subsequent criminal convictions? No, no. Respectfully, no, Judge. The difference between those cases and the current case, I guess I would somewhat disagree with your interpretation, at least in reference to the Fant case. I'm reminded somewhat of the parables of the blind men and the elephant. And what we have here is a defendant looking at the tail of this elephant, and the court looking at the tail of this elephant and making some assumptions about what the elephant is, instead of looking out and seeing the entire animal for what it is. The fact that Ms. Williams was convicted throughout of various failure to appear or various failure to pay, stemming from a legitimate conviction, does not make the following convictions legitimate. But that's really not of any consequence here, because what we're talking about is a policy. We're not talking about the nuts and bolts of each of those convictions. We're talking about the policy of the city, the official policy, which we believe starts at the top with the mayor and the city council, and then spreads down to various city players, including- Didn't the policy harm her with additional fines and additional incarceration? In other words, in order to offer relief, don't we have to essentially address the validity of those convictions and fines? No, Judge. And I think for that we look to the guidance of the Fandt v. City of Ferguson case, which, while only a district court case, I believe that this court's recent ruling in Evans really verifies and validates the reasoning found in Fandt. And the reason why is because, as was said in Fandt, the plaintiffs in that case alleged that their incarceration, after the original ordinance violations for which they were guilty, it resulted from post-judgment procedures. The way that this system worked and the way that these cases splintered and became kind of exponentially voluminous was because of the post-judgment procedures to enforce the nonpayment of the original fine. So, like they said in Fandt, the judgment in the plaintiff's favor in this case would not invalidate the original four convictions. It wouldn't invalidate anything at all, really. What it does merely is it points out that the policy that was used by the state, or by the city in this case, was unconstitutional. Wouldn't it invalidate the subsequent convictions for failure to appear and failure to pay? You know, because, I mean, in a lot of states, you know, what ends up happening is that there are warrants issued for failure to appear and failure to pay, but then there are not new criminal charges based on those warrants. They're actually just a violation of the previous court order to pay fines. So they're more in the nature of post-conviction proceedings. In this case, didn't they actually file new charges? And if they filed new charges that resulted in convictions, isn't it necessary that to afford you the relief you seek, that we will have to collaterally attack those convictions? I disagree, Judge. And I think what we need to look at here is what the effect of judgment in favor of plaintiff would be in this case. And it would not serve to invalidate those subsequent splintering charges. Because I think by not, in each one of those subsequent convictions, Ms. Williams was never assessed for her ability to pay those fines. So in a way, the city almost boxes itself out of any type of a heck issue because, as was said by the court in Fann, even if the procedures were changed, meaning the procedures initially were unconstitutional, the plaintiff still could have been found to be willfully refusing to pay. In that case, there would be no invalidation of anything. It's kind of a moot point or a red herring. Because if she, the court never determined that she was able to pay or not. And so those could be valid or they could be invalid. But we don't need to get into that because what we're talking about is the overarching policy. And we're talking about the manifest of this policy as shown through the bailiff, as shown through jail staff, as shown through the court officials, the city council, and the judge. So if you look at the judge, the judge was discharged with the duty to evaluate the financial circumstances of each individual defendant. But what ended up happening, according to the pleadings, the complaint, is they waive their right to counsel before they can actually see the judge. When they see the judge, the judge makes no inquiry. And his absolute immunity is not a bar, even though under the ordinance, he was discharged with the duty to make those inquiries. Right? I mean, because he's a judge, right? The judge always has to make an inquiry as to the financial ability to pay. The judge always has to make a decision as to whether or not the person's indigent is entitled to counsel. Correct. And if nobody ever explains to people their right to counsel, and that's on the judge, right? So why isn't he absolutely immune? Well, I guess what I would say to that is a judge is always going to be involved in this situation. A judge was involved in FANT. A judge was involved in all of the cases in Evans. The judge and the clerk were involved. So does it make a difference if the judge is involved and he's actually rendering a judgment that you're then trying? I mean, because I'm still having a hard time how we set aside the judgment of conviction for the subsequent charges. Well, it's conceivable, and this is the type of thing that we would probably learn through discovery, but it's conceivable that the judge was working in cahoots with the city and the judge was acquiescing to the city's demands on what or what not to do in the courtroom. I mean, this is not a summary judgment motion that we're contesting. This is a 12B6. True. And so we haven't even scratched the surface. And, frankly, the response that was given in this matter was absolutely muddled and I think intentionally confusing in trying to muddle these issues and make it a heck issue when there isn't one. It occurs to me that some of these claims might be heck barred and some of them might not be. For instance, your claim about the failure to inquire into indigency, it seems to me that there's a good argument that that's not barred because it might be that, in fact, she wasn't indigent. She was not? It could be. No, correct. I just wanted to hear you. Yes, sir. And therefore, the underlying judgment would not be undermined by this inquiry. Do you see what I mean? And that was the point that I was trying to make. Sorry, but it seems to me there may be other claims that are barred. So the way I'm coming at this is that we have to look at each of the claims. I agree. I don't think it's up or down on heck, in other words. I think each claim has to be examined individually to determine whether heck might bar the claim. But I want to ask you another question. In order for the city to be liable here, would the judge have to be a municipal employee? No. No. The way our complaint sounds is in not just employees of the city but also agents and people who are furthering the city's policy, and that's going to be a variety of levels from the person who is stapling the summonses together all the way up to the mayor. And I agree, Judge Arnold. I agree with your point. It's one I kind of clumsily tried to make before. The lack of uniformity and the lack of consistency in this practice opens the door to this type of claim, and it winds up removing any type of colloquial protection that the court could potentially have. This is a straight up the middle Monell claim, and it's not a Monell custom claim where we have to show which is the actor and deliberate indifference. This is official, as pled, promulgated policy by the city of Shorewood. And all that is required to show, and we think that we allege this, is a final policymaker. We have the mayor and the city council. We attached exhibits which reflect that autonomy in enunciating and furthering the policy. We need the unconstitutional act, which we have said, I think, in spades. In various ways in the four rather accounts that we have. And finally, we need damages to stem therefrom. And certainly we have damages in the form of not just threats, not just incarceration, but threats of incarceration. And as the threats remain, as the fines and costs remain, the threat of incarceration always hangs over one's head like the sword of Damocles. So this is not a heck kind of minuscule nuts and bolts type of a review here. This is a classic Monell official policy case. I'm long past my time, and so I will, unless the court has any questions that you'd like to ask me, I'd like to save the remainder of my time for rebuttal. Just one little factual question. The previous lawsuit involving this court was settled, was it not? That's correct. I'm sorry, Dave. I was looking at that settlement agreement. Did Judge Hale sign that? I couldn't tell who signed it. It was signed by Magistrate Judge Joe Volpe, and it was adopted by Judge Moody. Well, wasn't the city? Didn't the city sign it? Oh, you're talking about the settlement agreement. Yes, and that's another element here that shows control. Well, no, just tell me. The mayor signed it. I don't want to take any more of your time. The mayor signed on behalf of the city, as did Judge Hale. And Judge Hale did sign it. Right. And we would argue that that shows, you know, if the city has nothing to do with this, we don't know why it would be a signatory to the. Thank you. That's all. I didn't mean to take your time. Oh, very good, sir. I appreciate it. Thank you. Mr. Wilkerson. Sir, good morning. Please, the court. We agree that this is not about the hot check violations. What it is about is the convictions and the sentences for the failure to pay the fines. And that is the reason that Heck bars this claim, because to find the city, which I'll get to why they're not liable in any event later on, to find the city liable for this, you'd have to invalidate the convictions and the sentences for failure to pay those fines. How about the indigency hearing that Judge Arnold was referring to earlier? I mean, the Powers case there suggests that Heck is not implicated if there could be a willful failure to pay, or, for example, if there was a finding that the defendant was not indigent. Doesn't that take this, at least that particular claim, out of Heck? I don't think so, because the failure to inquire into the indigency in the Tate-Bearden cases, Tate v. Shorten, Bearden v. Georgia, are both habeas cases. And so the way that you overcome, the way you get out of jail for failing to, or for the judge failing to inquire into the indigency is to criminally appeal or to file a habeas. But it wouldn't necessarily undermine the result. Right. The key word is necessarily. And there are cases in which it wouldn't necessarily do that because she wasn't indigent. But if she wasn't indigent, Judge, there's no violation of the law. I'm sorry? If she wasn't indigent, there's no violation of the law. Yeah, there is, because you didn't inquire. It's the procedural. That's the claim, the lack of the inquiry. I disagree. I think it would necessarily invalidate. You can, but that's what it is. No, no, I don't disagree with that. I mean, I disagree with the idea that Heck wouldn't necessarily bar this claim. Okay. But you've got to look at this claim the plaintiff makes. She talks about prison time, talks about Tate, talks about Bearden, talks about allows imprisonment without the appointment of counsel, the Alabama v. Shelton. It's all about the convictions, the imprisonment, the sentences, which is all contemplated in Heck. Now, setting Heck aside, these are judicial actions. In this case, in Grandin v. St. Louis, it has made it very clear, even when a judge is appointed by the mayor, even when a municipal judge is appointed by the mayor, when the judge takes judicial actions, those judicial actions are attributable to the judge, not the city. And as far as the final policymaker, the judge cannot be the final policymaker for the city because the judge's decision is not the final say. So in Arkansas, the district court gets these violations. If she's found guilty, she can appeal to criminal court. Then she can appeal to appellate court and Supreme Court. The city council has zero role, and none has alleged that the city council had any role in imprisoning the plaintiff, convicting the plaintiff, imposing a fine on the plaintiff, issuing a warrant for the plaintiff, because the city simply has no role in this instance. Is Judge Hale a state judge through the entire course of the allegations here? It wasn't clear to me. I argue that Amendment 80, which made sure that the district court judge is a state district court judge, yes. Is that contested? Not that I know of. I'm sorry. You're saying he was a state judge? Yes, at least definitely in the context of these judicial acts. Now, you look at the Evans case, which I footnoted. I'm looking at a statute here that says he's not scheduled to become a state court until January 1, 2021. Right, but Amendment 80 is long before that, and we believe that that statute talks about the cost sharing and who has to bear the burden of the cost, because right now the city and the county share it. But soon it will be the state paying for the cost for the judge. So my point, and the reason I gave a little bit of a caveat, is that in this context, when they're taking judicial actions, there's no way he can be an employee of the city of Sherwood because they simply have no control over him. And look to Carter v. Cash. So even in the Evans case, which is about whether or not the clerk and the judge, mainly the clerk, did or did not write the fines down correctly, I disagree. I don't think the clerk or the judge are city employees, but that's a different context. That's not judicial actions. This is a judicial action. These are all judicial actions. The convictions, the sentencing, the issuing of warrants, French v. Lewis, Bradford v. State, our own state law, all say that these are judicial actions. So he cannot be a policymaker for the city because the city is simply not the final decision maker. The city has no role in any of this. Even if it were final, it's still a judicial act. Right. Isn't that right? And so I'm a little uncertain about whether you have to have both of those things operating at the same time or if they're independent. I think either way. I mean, if it's a judicial act, this Court in Granda has said that those are not attributable to the city. And if we go down the policy— Period, without regard to finality. Yes, right, exactly, without regard to finality. But then Granda also mentions the final policymaker argument as well. So they are two distinct things. I'm kind of flowing them together for the sake of time. Both the ideas are present in both the most relevant cases. Right, absolutely. Does it make a difference on, say, for example, the waiver of right to counsel, that there's a form that's presented to the defendant and the allegation is the defendant is informed that they will not be able to see the judge until they sign the waiver of the right to counsel? And that act takes place with a municipal employee, a clerk, and it appears that, on the record, no further inquiry is ever made. If the waiver is just signed, they just go trippingly ahead. Does that matter? Well— Is it just a ratification and that's the judicial act that's at play? Well, I believe that's a judicial act because the judge is the one required to appoint or not appoint counsel. But let's assume that the clerk did have some role in this and the clerk is a city employee and the clerk is under the control of the city. Well, we have to because that's what's led. Sure, right. So you still have to have a final policymaker making this decision. If the clerk did it, where's the final policymaker? The plaintiff has offered no allegation that there's a policy in place that says that the city council has passed an ordinance, has done anything that has said we are not going to— actually has to require. Remember, this is a rigorous standard of fault for deliberate indifference. The city council has to direct that a constitutional violation has occurred. And there's nothing that the plaintiff has alleged that the city council passed any ordinance, made any final policy that directed the court or the judge or any staff, for that matter, not to inquire into indigency or to not appoint counsel or not inquire as to whether counsel should be appointed. Nothing the city did, no allegation that the city issued warrants that were unlawful, which, by the way, there's no claim that any warrant was actually invalid. There's just no role the city could play in any of this. Aside from the allegation that we set up, that we pass an ordinance, that set up a second district court clerk to help with the collection of fine money. Even assuming that that somehow leads to a constitutional violation at some point down the road, that ordinance does not direct, mandate, require a constitutional violation occurred. And, in fact, the plaintiff, in one of her headings in the brief, says that the ordinance allows a constitutional violation. This court in Hollingsworth made it very clear that a policy, in regards to Taser at least, had to direct that the use of the Taser was unconstitutional. It can't just be a policy or ordinance or decision allows something to happen. Everything could allow something to happen. It has to require it. It has to direct it. And there's no allegation here that anything happened or the city did anything that would require a constitutional violation. Now, I want to quickly go to the statute of limitations as well. This case is all about the imprisonment. She said in her complaint, this is about multiple convictions resulting in 160 days of incarceration. She went into jail or she got out of jail in January 2015. She brings this suit February of 2018. That is over three years beyond the time that she was released from jail and well over three years from the time that she was in court and didn't get a counsel or it wasn't acquired as their indigency. Because this is a Tate Bearden case, because this is about her imprisonment, she has to have filed this within the three years after her release. There's simply no other claim available to her that would allow her to bypass the statute of limitations. And the reliance on FANT, by the way, FANT never addresses this. Even if FANT, an Eastern District of Missouri court case, even if FANT did apply here, FANT never talks about the statute of limitations. So we believe the statute of limitations also bars the plaintiff's claim. Real quickly on FANT, I made this point in the brief, but I re-looked at the FANT complaint. FANT had 61 allegations against city jail staff doing things. There is no allegation in this case that a city jail employee did anything. In fact, there's no allegation that Sherwood has a city jail because they don't have a city jail, they go to Pulaski County Jail. So you've got to look at FANT very carefully. FANT talks about these convictions and then there's a failure to pay. The city jail will take in the person as alleged in the complaint and say you're not getting out until you pay the money. And they would keep them there until the criminal defendant paid the money. There was never judicial determination alleged in the complaint that they were supposed to go to jail for these. It was an extortion as alleged in the complaint, an extortion attempt by the city of Ferguson, again alleged in the complaint, that the city jail administrator, city jail, was doing all this. Isn't there an allegation in this complaint that there were attempts to serve warrants that were a failure to appear, that if you paid some sort of amount of money, $50 up to $1,000, then you wouldn't have to appear and it was never accounted for? Vague allegations of that. Well, it's not all that vague when they say she paid and it never got accounted for. I mean, that seems to be fairly direct. What I mean is there's no allegation that a city employee did anything. There's no allegation that Officer X did this on this date and did this. FANT's very different. FANT goes through each of the plaintiffs and alleges and shows what was actually happening. So under ICBAL, the plaintiff cannot just lay out their allegations and their assertions. There has to be something, and there's not even a specific date in mind, so we can't even identify whether the statute of limitations applies. There's no identification of who did what. There's no identification of who did what when. There's no allegation that the warrants were even invalid under the Constitution. So FANT's very, very different than this case, even if FANT applied. But again, this case is about incarceration. This case is about what the judge did. And this case, because of that, it's a judicial act. The statute of limitations applies, and I believe HEC applies to all these because I think this would necessarily invalidate the convictions for failure to pay a fine and invalidate the sentences that the judge handed down for failure to pay those fines. And with that, unless there's any more questions, that's all I've got. Thank you. Mr. Lowell. It's like we're talking two different languages. We have the defendant who is myopically looking and straining through this microscope, intentionally disregarding the bigger picture here. We don't allege that the judge in this case was a policymaker or a final policymaker. We allege that the city council, the city of Shorewood through the city council and through the mayor are the final policymakers of this. Defendant's argument is akin to, in a police Monell claim, a police custom claim, it's akin to saying that the arresting officer is a final policymaker. The arresting officer is just carrying out the custom that starts from the top, and that's what Judge Hale did in this case, as well as his clerks, as well as the people who run the jail, as well as the court officials, the police officers, the people who showed up at random times on Christmas Eve at this woman's house. So it's not as defendant argues in terms of final policymaker. Evans absolutely involves judicial action. Otherwise, the case loses its import and it loses its meaning. Of course, it refers to the judicial action of the judge and the clerk. That's what makes it a good case, and that's what makes it an important case. So I understand what you're saying, but how is this case different from Granda and King? Well, first of all, in Granda, this court said outright that this is not a case where the plaintiff is alleging an unconstitutional written policy. That is in the text of Granda, and that's what plaintiff is doing here. So the court distinguishes that, what we're doing here, from its ruling in Granda. And in Granda, again, is an isolated attack on a single actor, not on an overall, an overarching policy that's coming from the top. I see that I'm out of time. If I just may briefly say, we do allege in the complaint that the statute of limitations begins on August the 25th of 2016 when these cases miraculously disappeared after the ACLU filed a lawsuit two days earlier. So Younger's not a tolling doctrine, but what it does is it makes – it divests the plaintiff of any standing until she is no longer in State proceedings. And that was what happened in Dade also. Thank you. Thank you, sir. We'll take the case under advisement. Ms. Williams, you may call the next case.